## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

THELMA CLEMENT, on behalf of herself and all
others similarly situated,

     Plaintiff,

  v.

ASTRAZENECA PHARMACEUTICALS LP,
ASTRAZENECA LP, ASTRAZENECA AB and
AKTIEBOLAGET HASSLE,

     Defendants.

**CIVIL ACTION NO.**

**JURY TRIAL DEMANDED**

**06 - 40041 FDS**

## CLASS ACTION COMPLAINT

Plaintiff, Thelma Clement, on behalf of herself and all other persons similarly

situated, by and through her undersigned attorneys, brings this civil action against

defendants, AstraZeneca Pharmaceuticals LP, AstraZeneca LP, AstraZeneca AB and

Aktiebolaget Hassle (hereinafter "Astra" or "Defendants"), for violation of the federal

antitrust laws and the antitrust and/or consumer protection statutes from twenty-four

states and alleges, upon knowledge as to herself and her acts, and upon information and

belief as to all other matters, as follows:

## NATURE OF THE ACTION

1. This case arises from Defendants' unlawful scheme and anti-competitive

activities in connection with the manufacture and sale of Toprol-XL, a brand name,

prescription drug.

RECEIPT # 104 749
AMOUNT $ 350.00
SUMMONS ISSUED 3
LOCAL RULE 4.1
WAIVER FORM
MCF ISSUED
BY DPTY. CLK. KN
DATE 3-3-06

2.      Defendants manufacture and market metoprolol succinate products under the brand name Toprol-XL. Toprol-XL is a prescribed extended release drug that is used to treat hypertension, angina and congestive heart failure (together, hereinafter referred to as "cardiovascular disease"). Toprol-XL is sold in 25mg, 50mg 100mg and 200 mg doses. Toprol-XL is approved by the United States Food and Drug Administration (the "FDA").

3.      To date, no competing brand-name drug and no generic version of Toprol-XL has been marketed in the United States. This lack of competition is a result of Defendants having unlawfully obtained patents in connection with Toprol-XL and maintained a monopoly for Toprol-XL through misrepresentations to the U.S. Patent and Trademark Office ("PTO").

4.      In July and August 2003 and April and December 2004, Defendants initiated and engaged in sham patent infringement litigation against generic drug manufacturing companies which filed "Abbreviated New Drug Applications" ("ANDAs") for approval of a bioequivalent version of Toprol-XL. This sham litigation was commenced in order to enforce Defendants' unlawfully obtained patents, even though they knew or should have known that the patents were invalid and/or unenforceable.

5.      Absent Defendants' unlawful, anti-competitive conduct, less expensive, bioequivalent generic versions of Toprol-XL would have been on the market much earlier. Through their unlawful conduct, Defendants illegally deprived Plaintiff and Class members access to substantially lower-priced generic versions of Toprol-XL, thereby causing Plaintiff and the Classes to overpay for metoprolol succinate in an amount of at least hundreds of millions of dollars.

00007676.WPD ; 1                                                              2

6.       The United States District Court for the Eastern District of Missouri,

Eastern Division, in an opinion issued on January 17, 2006, held that the patents at issue,

Defendants' `161 and `154 patents (defined herein), were invalid and therefore

unenforceable due to Defendants' inequitable conduct before the PTO during the

prosecution of the patents at issue. *In re Metoprolol Succinate Patent Litigation* 2006

U.S. Dist. LEXIS 1328 (E.D. Mo).

7.       Plaintiff seeks a judgment declaring Defendants' conduct unlawful under

§ 2 of the Sherman Act, 15 U.S.C. § 2, and pursuant to § 16 of the Clayton Act, 15

U.S.C. § 26, enjoining continuation of Defendants' monopolistic practices.

8.       Neither Plaintiff nor the National Class seek any relief under § 4 of the

Clayton Act, 15 U.S.C. § 15.

9.       Plaintiff and the California and Indirect Purchaser Classes seek damages

and equitable relief for Defendants' violations of the antitrust and/or deceptive trade

practice statutes of Alabama, Arizona, California, District of Columbia, Florida, Iowa,

Kansas, Maine, Massachusetts, Michigan, Minnesota, Mississippi, Nebraska, Nevada,

New Mexico, New York, North Carolina, North Dakota, Ohio, South Dakota, Tennessee,

Vermont, West Virginia and Wisconsin (collectively, the "Indirect Purchaser States").

10.      Plaintiff and the California and Indirect Purchaser Classes seek equitable

remedies as to Defendants' unjust enrichment.

## JURISDICTION AND VENUE

11.      This Court has jurisdiction over this action pursuant to § 16 of the Clayton

Act, 15 U.S.C. § 26, for injunctive and equitable relief to remedy Defendants' violations

of the federal antitrust laws, particularly § 2 of the Sherman Antitrust Act, 15 U.S.C. § 2.

00007676.WPD ; 1                                    3

This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(a).

12.     Venue is proper in this District under 15 U.S.C. §§ 22 and 28 U.S.C. § 1391 because Defendants reside, transact business, or are found within this District, and a substantial part of the events giving rise to the claims arose in this District. Specifically, Defendant AstraZeneca LP maintains its principal place of business in this District and Defendant AstraZeneca Pharmaceuticals LP maintains a research and development facility as well as a supply site and development facility in this District. Furthermore, the interstate commerce described below was, and is carried on, in part, within this judicial district and the monopolization and other wrongful conduct alleged in this Complaint was carried out, in part, within this judicial district.

## PARTIES

13.     Plaintiff, Thelma Clement, is a resident of San Francisco, California. Plaintiff purchased Toprol-XL at supra-competitive prices during the proposed Class Period.

14.     Defendant AstraZeneca Pharmaceuticals LP is a company organized and existing under the laws of Delaware, which manufactures, distributes, markets, sells, and/or profits from pharmaceutical products including Toprol-XL throughout the United States, including within this District. AstraZeneca Pharmaceuticals LP maintains a research and development facility in Waltham, MA as well as a supply site and business center in Westborough, MA. AstraZeneca Pharmaceuticals LP is a U.S. subsidiary of AstraZeneca PLC, and was created as a result of the union of Zeneca Pharmaceuticals and Star Pharmaceuticals LP in the U.S. after the 1999 merger.

00007676.WPD ; 1                                                    4

15.    Defendant AstraZeneca LP is a company organized and existing under the laws of Delaware, with its principal place of business at 50 Otis Street, Westborough, MA.  AstraZeneca LP holds an approved New Drug Application for the United States Food and Drug Administration ("FDA") for metoprolol succinate preparations with extended release, which it sells under the brand name Toprol-XL.  AstraZeneca LP is a U.S. subsidiary of AstraZeneca PLC.

16.    Defendant AstraZeneca AB is a company organized and existing under the law of Sweden, having its principal place of business at S. 151 85 Sodertalje, Sweden.

17.    Defendant Aktiebolaget Hassle is a company organized and existing under the laws of Sweden, having its principal place of business at Molndal, Sweden. Aktiebolaget Hassle is a wholly-owned subsidiary of AstraZeneca AB.

18.    The acts charged in this Complaint as having been committed by the Defendants were authorized, ordered or committed by their officers, agents, employees or representatives while actively engaged in the management of the Defendants' business or affairs.  Whenever any reference is made in this Complaint to any corporate Defendant, such reference shall be deemed to include predecessors, successors, parents, subsidiaries, affiliates and divisions of the corporation.

## INTERSTATE TRADE AND COMMERCE

19.    Defendants manufacture, distribute and sell Toprol-XL in a continuous and uninterrupted indirect flow to the end-user Plaintiff and the Class she represents.

20.    During the entire Class Period, Defendants sold and shipped substantial quantities of Toprol-XL in a continuous and uninterrupted flow in interstate commerce to

customers located in states other than the states in which Defendants manufacture Toprol-XL.

21.    In addition, throughout the Class Period, in connection with the purchase and sale of Toprol-XL, monies, as well as contracts, bills and other forms of business communication and transactions were transmitted in a continuous and uninterrupted flow across state lines.

22.    The business activities of Defendants that are the subject of this Complaint were within the flow of, and substantially affected, interstate trade and commerce.

## CLASS ACTION ALLEGATIONS

23.    Pursuant to Federal Rule of Civil Procedure 23(a) and 23(b)(2) and/or 23(b)(3) Plaintiff brings:

(a) The First Cause of Action on behalf of herself and the following Class:

All persons or entities throughout the United States of America and its territories, who purchased and/or paid, in whole or in part, for prescriptions of Toprol-XL or generic versions of Toprol-XL during the period May 5, 2005 through the present (the "Class Period") for consumption by themselves, their families, or their members, employees, insureds, participants or beneficiaries. For purposes of this class definition, persons and entities "purchased" Toprol-XL if they paid some or all of the purchase price. ("National Class")

(b) The Second and Fourth Causes of Action on behalf of herself and the

following Class:

All persons or entities throughout California who purchased and/or paid, in whole or in part, for prescriptions of Toprol-XL or generic versions of Toprol-XL during the period May 5, 2005 through the present for consumption by themselves, their families, or their members, employees, insureds, participants or beneficiaries. For purposes of this class definition, persons and entities "purchased" Toprol-XL if they paid some or all of the purchase price. ("California Class")

00007676.WPD ; 1                                            6

(c) The Third and Fourth Causes of Action on behalf of herself and the

following Class:

> All persons or entities throughout Alabama, Arizona, California, District of Columbia, Florida, Iowa, Kansas, Maine, Massachusetts, Michigan, Minnesota, Mississippi, Nebraska, Nevada, New Mexico, New York, North Carolina, North Dakota, Ohio, South Dakota, Tennessee, Vermont, West Virginia and Wisconsin, who purchased and/or paid, in whole or in part, for prescriptions of Toprol-XL or generic versions of Toprol-XL during the period May 5, 2005 through the present for consumption by themselves, their families, or their members, employees, insureds, participants or beneficiaries. For purposes of this class definition, persons and entities "purchased" Toprol-XL if they paid some or all of the purchase price. ("Indirect Purchaser Class")

Excluded from the Classes are Defendants, their officers, subsidiaries and affiliates, and government entities.

24.     Plaintiff does not, as of yet, know the exact size of the Classes. However, based upon the nature of the trade and commerce involved, Plaintiff believes that the total number of Class members is in the tens of thousands and that Class members are geographically dispersed throughout the United States. For that reason, joinder of all members of the Classes is not practicable.

25.     There are questions of law and/or fact common to the Classes which predominate over any questions affecting only individual members of the Classes. Such common questions include, without limitation, the following:

- a. whether Defendants willfully obtained and/or maintained monopoly power over Toprol-XL and its generic equivalents;
- b. whether Defendants' patents were obtained through fraud and/or inequitable power;

00007676.WPD ; 1                                        7

c. whether competition has been restrained as a result of the alleged misconduct;

d. whether Defendants engaged in the filing of sham patent litigation;

e. whether the unlawful conduct of Defendants caused a delay of the manufacture and marketing of generic metoprolol succinate prescription drugs from May 5, 2005 through the present;

f. whether Plaintiff is entitled to declaratory and injunctive relief;

g. whether Plaintiff and the Class members paid more for metoprolol succinate-based prescription drugs than they would have had to pay in a competitive market place, unfettered by Defendants' unlawful, fraudulent, unfair and anti-competitive conduct;

h. Whether Defendants were and continue to be unjustly enriched to the detriment of the California and Indirect Purchaser Classes, entitling Plaintiff and the Class members to disgorgement of all monies resulting there from; and

i. the appropriate measure of the amount of damages suffered by the California and Indirect Purchaser Classes.

26.     Plaintiff's claims are typical of the Classes because Plaintiff and all members of the Classes were injured and continue to be injured in the same manner by Defendants' unlawful, anticompetitive and inequitable methods, acts, practices and wrongful conduct in the conspiracies complained of herein, *i.e.*, they have paid supra-competitive and artificially high prices for Toprol-XL and will continue to be forced to

do so until the markets for Toprol-XL and its generic equivalents are competitive and prices have stabilized to competitive levels.

27.     Plaintiff will fairly and adequately protect the interests of the Classes. The interests of the named Plaintiff are coincident with, and not antagonistic to, those of the other members of the Classes. Plaintiff has retained counsel who are experienced in the prosecution of antitrust and unfair competition class actions, and Plaintiff will vigorously prosecute this case on behalf of the Classes.

28.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy. A class action would allow Plaintiff and the Class members to pursue claims that would be uneconomical to pursue individually. The Classes are readily definable and is one for which records should exist. Prosecution as a class action will eliminate the possibility of repetitious litigation or inconsistent judgments.

29.     Defendants have acted or refused to act, as alleged herein, on grounds generally applicable to the Classes, thereby making appropriate final injunctive relief and/or corresponding declaratory relief with respect to the Classes as a whole.

## RELEVANT MARKETS

30.     To the extent applicable to the claims alleged herein, the relevant product market is the market for the manufacture and sale of Toprol-XL and all generic bioequivalents rated "AB" (defined below).

31.     The relevant geographic market is the United States as a whole (for Count I), the State of California for (Count II), and the Indirect Purchasers States (for Counts III and IV).

32.     At all relevant times up to and including the present, Defendants' market share for Toprol-XL and its AB-rated generic equivalents in the relevant product and geographic markets was and is 100%.

## BACKGROUND

### A.     The Federal Regulatory Scheme for Generic Drugs

33.     In 1984, Congress enacted the Drug Price Competition and Patent Term Restoration Act 1984, Pub. L. No. 98-417, 98 Stat. 1585 (the "Hatch-Waxman Amendments"), amending the Federal Food, Drug, and Cosmetics Act, 21 U.S.C. §§ 301-392. Under the Food, Drug, and Cosmetic Act, drug manufacturers must obtain FDA approval for any new drug by filing a New Drug Application ("NDA"), which requires the submission of specific data concerning the safety and effectiveness of the drug, as well as any information on applicable patents.

34.     The FDA lists patents which apply to the new drug - the "pioneer drug" - in its publication known as the Approved Drug Products With Therapeutic Equivalence Evaluations, typically referred to as the "Orange Book." To be properly listed in the Orange Book, the patent must meet two statutory requirements. First, the patent must "claim the drug" or "a method of using such drug." Second, the patent must be such that "a claim of patent infringement could reasonably be asserted if a person not licensed by the owner engaged in the manufacture, use, or sale of the drug." 21 U.S.C. §§ 355(b) and 355(c)(2).

35.     The Hatch-Waxman Amendments provide that companies may seek approval to produce and market a generic form of a previously approved, or "pioneer" drug by filing only an ANDA that relies on the safety and effectiveness findings reported

in the NDA for the previously approved drug. One of Congress' central goals in enacting

the Hatch-Waxman Act and the ANDA provision was "to bring generic drugs onto the

market as rapidly as possible." *Nova Pharmaceutical Corm. v. Shalala*, 140 F.3d 1060,

1068 (D.C. Cir. 1998).

    36.    The ANDA must include information concerning the generic drug

company's position with respect to the patent for the previously approved drug, and must

include one of four certifications:

        I.    that no patent for the pioneer drug has been filed with the FDA (a "Paragraph I Certification);

        II.    that any patent listed in the FDA Orange Book for the pioneer drug has expired (a "Paragraph II Certification");

        III.    that the patent for the pioneer drug will expire on a particular date and the generic drug company does not seek to market its generic product before that date (a "Paragraph III Certification"); or

        IV.    that the patent for the pioneer drug is invalid or will not be infringed upon by the generic drug company's proposed product (a "Paragraph IV Certification").

    37.    If the ANDA does not address all of the patents listed for a drug in the

Orange Book by means of one of the above four certifications, the FDA will not approve

the generic drug for sale.

    38.    Where a generic drug is completely equivalent to a brand-name drug, the

FDA assigns the generic drug an "AB" rating. Only drugs that carry the FDA's AB

generic rating may be substituted by a pharmacist for a physician's prescription for a

brand-name drug.

    39.    Generic drugs are priced at a significant discount from the price of the

brand-name version, typically from 30 to 50 percent below the brand-name price. Where

there is competition from more than one generic manufacturer, prices decrease even further, and the brand-name version loses market share - often up to 80% -- to the generic manufacturers. Absent entry by generic manufacturers, there is little price competition.

## DEFENDANTS' ANTICOMPETITIVE CONDUCT

40.     Defendants have successfully forestalled generic competition to Toprol-XL from entering the market – thereby delaying the end-users the benefits of cheaper, generic extended-release metoprolol succinate products – by obtaining patents they did not deserve from the United States Patent & Trademark Office ("PTO") through intentional misrepresentations and omissions, fraudulently listing these patents in the Orange Book, and bringing and maintaining sham patent infringement suits based on these patents.

### A.     Defendants Fraudulent Procurement of Patents

41.     Defendants have falsely asserted that two patents cover Toprol-XL and bar generic competition: U.S. Patent No. 5,001,161 (the "'161 patent") and U.S. Patent No. 5,081,154 (the "'154 patent") (collectively, the "Patents").

42.     The '161 patent issued on March 19, 1991, with a single claim: "A pharmaceutical composition comprising metoprolol succinate together with a sustained release pharmaceutically acceptable carrier."

43.     The '154 patent issued on January 14, 1992, with a single claim: "Metoprolol succinate."

44.     The named inventors on both the '161 and '154 patents are Curt H. Appelgren and Eva C. Eskilson.  However, Appelgren and Eskilson were not the inventors of metoprolol succinate, which had been first made at Astra before either of

00007676.WPD ; 1                                    12

them joined the company and more than ten years before patent applications claiming the compound were filed in the PTO naming them as inventors.

45.     As explained in detail below, when Appelgren and Eskilson tried to claim formulations of metoprolol succinate for their new employer after leaving the employ of Astra, Astra contested their right to do so and asserted its ownership to rights to metoprolol succinate in a complaint filed in the Swedish Patent Office that alleged that metoprolol succinate had been invented by its employee Toivo Nitenberg and disclosed in confidence to Appelgren and Eskilson. Several months later, Appelgren and Eskilson agreed to drop metoprolol succinate from their application, assign rights to Astra, and file a new application directed to metoprolol succinate and assign the new application to Astra.

46.     In the early 1980s, Appelgren and Eskilson were employed at Astra's AB Hassle division in Molndal, Sweden. Among their duties, Appelgren and Eskilson participated in a project to develop new controlled release formulations of metoprolol. Their duties, however, had nothing to do with the identification, synthesis, or invention of different salts of metoprolol.

47.     Under the organization and procedures within the Astra organization at the time, responsibility for sythesis of alternative compounds rested with a group employed by Astra Pharmaceutical Production AB, located in Sodertalje, Sweden. Neither Appelgren nor Eskilson conceived of or synthesized metoprolol succinate. Rather, that compound was supplied to the group of which Appelgren and Eskilson were members by chemists employed by Astra in Sodertalje, including Lars Lilljequist.

48.     In his deposition taken in Astra's patent litigation against potential generic competitors, Appelgren admitted that metoprolol succinate was not a newly developed product at Astra, but was an "old," known compound supplied to the product development group.

49.     The other inventor, Ms. Eskilson, could not recall at her deposition why she was named an inventor of metoprolol succinate.

50.     At the end of 1982, Appelgren resigned from Hassle to form his own company, Lejus Medical AB ("Lejus"). Appelgren was a founder and 25% owner of Lejus.

51.     Several months later, Eskilson joined Appelgren at Lejus, and Appelgren and Eskilson began to work on developing a sustained release formulation of quinidine sulphate for a U.S. company unrelated to Astra.

52.     On January 10, 1984, Lejus filed a Swedish patent application (SE8400085, the "Swedish Application") naming Appelgren and Eskilson as the inventors based on the sustained release formulation they had developed for quinidine sulphate at Lejus. When listing potentially useful pharmaceutical agents for their sustained release formulation, Appelgren and Eskilson included metoprolol succinate. Although Appelgren and Eskilson knew of metoprolol succinate from their work at Hassle, they did not believe they were violating any duty of confidentiality by disclosing it in the Swedish Application, because they did not believe it was a new compound and certainly did not believe they were its inventors.

53.     The Lejus application was published in July, 1985 and came to the attention of Hassle and its parent, Astra AB, which on October 21, 1985, filed a

00007676.WPD ; 1                                14

complaint with the Swedish Patent Office asserting that Appelgren and Eskilson were not the inventors of metoprolol succinate and that the compound was invented by Toivo Nitenberg, a Hassle employee. At this point, Lejus had already filed a corresponding U.S. patent application (U.S. Serial No. 690,197 (the "'197 application"), which ultimately issued as U.S. Patent No 4,780,318 (the "'318 patent").

54.    To settle Hassle's complaint, Lejus, Appelgren, and Eskilson agreed to assign Hassle any rights to metoprolol succinate in an agreement dated April 21, 1986 (the "Lejus/Hassle agreement"). The Lejus/Hassle agreement was negotiated on behalf of Hassle and Astra at least by employees of Astra's patent department, including Bengt Wurm.

55.    In March, 1988, Lejus filed the U.S. patent application (U.S. Serial No. 172,897, the "'897 application") that eventually issued as the '161 patent, tracking almost exactly the agreed-upon language from the Lejus/Hassle agreement. Thereafter, Lejus assigned this application to Hassle.

56.    By the time this application was filed in March of 1988, more than one year had passed since publication of Lejus's Swedish Application naming metoprolol succinate. Thus, Hassle knew that unless the applications issuing as the '161 and '154 patents could rely on the filing date of the Swedish Application, any new claims in the '161 and '154 patents to metoprolol succinate or sustained-release formulations of it could be unpatentable, *inter alia*, as anticipated by the Swedish Application, pursuant to 35 U.S.C. §§ 102(b), 119(a). They would have been unpatentable as anticipated because of other prior art as well, including an article published in 1987 and two other patent applications filed by Hassle.

00007676.WPD ; 1                                    15

57.    Thus, Hassle knew that if it identified Nitenberg as the inventor of the '161 and '154 patents, then because Nitenberg is not an inventor on the '897 application and the Swedish Application, that Hassle would not be able to rely on the filing date of the Swedish Application for the '161 and '154 patents and those patents would be rejected by the PTO or invalidated in litigation.

58.    Hassle knew that in order to obtain U.S. patents directed to metoprolol succinate and avoid the bar of the published Swedish Application, it had to file fraudulently in the names of Appelgren and Eskilson in order to make (fraudulent) claim of priority. Hassle did just this.

59.    Appelgren, Eskilson, the representatives prosecuting the applications, employees of Hassle and Astra, and others involved in the prosecution of the '161 and '154 patents knew that Appelgren and Eskilson were not the joint inventors of metoprolol succinate or the subject matter claimed in the patents.

60.    During the prosecution of the '161 and '154 patents, Defendants did not disclose to the PTO its complaint to the Swedish Patent Office dated October 21, 1985, the Lejus/Hassle Agreement, the facts leading to these documents, or that Toivo Nitenberg had made metoprolol succinate in 1971.

61.    During the prosecution of the '161 and '154 patents, Defendants intentionally made other material misrepresentations and omissions, including the submission of a declaration of an employee, John Anders Sandberg (the "Sandberg Declaration"). Among other things, although the Sandberg Declaration extols the virtue of metoprolol succinate for use in once-daily, controlled-release preparations, Defendants did not explain that its alleged virtues were unique to a particular formulation developed

by Sandberg, and unrelated to any work done by Appelgren and Eskilson. The Sandberg Declaration also omits material information known to Dr. Sandberg and Defendants about prior art and the performance of other metoprolol salts.

62.     Because the facts and information that Defendants failed to disclose and/or misrepresented to the PTO directly relate to proper inventorship and derivation and would have precluded patentability under, at least, 35 U.S.C. § 102(f), they were of the highest materiality.

63.     These omissions and/or misrepresentations were purposeful. They were made with an intent to deceive and did, in fact, deceive the PTO, resulting in the issuance of the '161 and '154 patents.

**B.      Defendants' Sham Disclaimer**

64.     Defendants' '318 patent, issued on October 25, 1998 was due to expire on October 25, 2005. Claim 8 of the `318 patent claimed "metoprolol succinate".

65.     Patents `161 and `154, due to expire on March 18, 2008, also claim "metoprolol succinnate."

66.     The Patent Act, at the time patent `318 was filed, entitled Defendants to only 17 years of patent protection for metoprolol succinate and prohibited them from "double patenting" this compound in order to obtain more than 17 years of patent protection.

67.     Nonetheless, Defendants wrongfully and in bad faith disclaimed Claim 8 of the `318 patent in order to avoid double-patenting invalidity of the `161 and `154 patents and to obtain more than 17 years of patent protection. The disclaiming of Claim 8 of `318 had no legitimate grounds and is, effectively, a sham filing.

00007676.WPD ; 1                                                        17

C.    **Defendants' Sham Orange Book Listings**

68.    Despite Defendants' knowledge that the '161 and '154 patents were invalid, Defendants caused the patents to be listed in the Orange Book as covering Toprol-XL and reasonably giving rise to a claim of infringement. Defendants did not withdraw these Orange Book listings even after being provided with clear proof that they were improper. In fact, the Orange Book listings were objectively baseless.

69.    Defendants knew that under the Hatch-Waxman Act, if they sued to enforce patents listed in the Orange Book, they would receive effectively an automatic injunction that would last up to thirty months, would bar generic competitors from marketing metoprolol succinate products without any proof of likelihood of success and regardless of the invalidity of the listed patents or the baselessness of the suit, and would delay FDA approval of ANDAs filed by generic competitors.

70.    Defendants' decisions to cause the patents to be listed, not to inform the FDA that the '161 and '154 patents are invalid, and not to withdraw the Orange Book listings, were intentionally deceptive.

D.    **Defendants' Sham Patent-Infringement Lawsuits Against Generic Manufacturers**

71.    Knowing that the '161 and '154 patents were invalid, Defendants filed numerous patent-infringement lawsuits against KV Pharmaceutical Co., Andrx Pharmaceutical, LLC, Andrx Corp., and Eon Labs, Inc. (collectively, the "generic manufacturers") to prevent them from marketing generic versions of Toprol-XL. These actions were transferred to the Eastern District of Missouri for pre-trial proceedings.

72.    These suits filed by Defendants were objectively baseless, filed in bad faith with the sole purpose of preventing the generic drug manufacturers from selling

generic versions of Toprol-XL, which would compete with Toprol-XL and likely be sold at lower prices than Toprol-XL.

73.    Defendants knew that although they would not prevail on the merits of the lawsuits, the process of commencing these sham suits would automatically grant them an additional 30 months of monopoly power over metoprolol succinate products, barring generic manufacturers from competing for this period of time.

74.    On January 17, 2006 The Honorable Judge Rodney W. Sippel, of the United States District Court for the Eastern District of Missouri, granted summary judgment for the generic manufacturers, finding, *inter alia,* that (1) the '161 and '154 patents were invalid for double patenting based on Claim 8 of the '318 patent, and that (2) the '161 and '154 patents were unenforceable due to Astra's deliberate material omissions and misrepresentations to the PTO regarding the dispute over the actual inventor of metoprolol succinate. Judge Sippel found that the inventorship issue was "highly material" to patentability and that Astra's intent to deceive was "clearly present."

75.    Defendants' conduct during the patent litigation further evinces their anticompetitive intent. For example, Judge Sippel noted that, during the litigation, Defendants "maintained a pattern of submitting witness declarations that contradict their own prior deposition testimony."

## ANTI-COMPETITIVE EFFECTS

76.    Defendants' unlawful exclusionary conduct has prevented competition in the market for metoprolol succinate-based prescription drugs. As a result, Defendants sold Toprol-XL without any competition from generic versions of the drug.

77.     The prices for Toprol-XL have been fixed, raised, maintained or stabilized at artificially high and noncompetitive levels.

78.     As a result of Defendants' unlawful conduct, the ANDA approval process for generic versions of Toprol-XL has been delayed, forcing the generic manufacturers to divert resources from their applications and expend valuable resources on needless litigation.

79.     When the first generic version finally enters the market, its manufacturers will be entitled to 180 days of exclusivity in the market for that particular dosage strength. As a result of Defendants' unlawful listing of their invalid patents in the Orange Book, the entry of other generic competitors will be further delayed, in turn further forestalling competition for metoprolol succinate products.

80.     Defendants have enjoyed a monopoly over Toprol-XL and its generic equivalents because they have had the power to maintain the price of Toprol-XL at supra-competitive levels. When competitors enter the market, Defendants will not be able to maintain their current prices without losing substantial sales.

81.     End-users of Toprol-XL have been deprived of the benefit of free and open competition in their purchases.

82.     Competition in the production and sale of Toprol-XL and its generic equivalents has been restrained, suppressed and eliminated.

83.     Plaintiff and the other Class members paid more for Toprol-XL than they would have had to pay under conditions of free and unrestricted competition.

84.     As a direct and proximate result of Defendants' wrongful conduct,

Defendants have wrongfully profited and obtained substantial monies from Plaintiff

and the members of the Classes.

## FIRST CAUSE OF ACTION

### FOR DECLARATORY AND INJUNCTIVE RELIEF
### UNDER SECTION 16 OF THE CLAYTON ACT FOR VIOLATIONS
### OF SECTION 2 OF THE SHERMAN ACT

85.     Individual and Representative Plaintiff, on behalf of herself and the

National Class realleges, as if fully set forth, each and every prior allegation contained in

the Complaint, and further alleges, as follows, against all Defendants.

86.     Section 2 of the Sherman Act states that it is illegal to monopolize or

attempt to monopolize any part of interstate trade or commerce.

87.     From May 5, 2005 through the present, Defendants have possessed 100%

monopoly power in the market for the manufacture and sale of metoprolol succinate-

based prescription drugs, including Toprol-XL and its generic versions, in the United

States. But for Defendants' unlawful anti-competitive conduct, as alleged herein,

Defendants would have never obtained monopoly power in the relevant market.

88.     Defendants knowingly and willfully acquired and maintained its

monopoly power through unlawful conduct including the filing of sham patent litigation

in attempting to unlawfully extend its patent for its metoprolol succinate-based products.

89.     Defendants filed the sham patent lawsuit for the anti-competitive purpose

of delaying the introduction of generic versions of Toprol-XL into the market.

90.     Defendants' bad faith conduct was done with the intent and purpose, and

had the effect, of obtaining and maintaining monopoly power and restraining competition

00007676.WPD ; 1                            21

in the relevant market.

91.      While obtaining and possessing unlawful monopoly power in the market

for Toprol-XL, Defendants fixed, maintained, and raised the price of Toprol-XL to

artificially high and/or supra-competitive levels.

92.      Plaintiff and the other members of the Class were injured by reason of

Defendants' antitrust violations alleged in this Complaint.  Their injury consists of paying

higher prices for metoprolol succinate-based prescription drugs than they would have

paid in the absence of these violations.  Their injury is of the type the antitrust laws were

designed to prevent and flows from Defendants' unlawful conduct.

93.      Pursuant to Rule 57 of the Federal Rules of Civil Procedure and 18 U.S.C.

§ 2201(a), Plaintiff and the Class are entitled to a declaration that Defendants'

monopolization and attempts to monopolize the market for Toprol-XL and their generic

equivalents violated §2 of the Sherman Act.

94.      Plaintiff and the Class are entitled to an injunction pursuant to §16 of the

Clayton Act enjoining Defendants' continued monopolistic practices.

95.      Plaintiff and the Class have no adequate remedy at law.

## SECOND CAUSE OF ACTION

### VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW
### (BUS. & PROF. CODE SECTIONS 17200 *ET SEQ.*)

96.      Individual and Representative Plaintiff, on behalf of herself and the

California Class realleges, as if fully set forth, each and every prior allegation contained

in the Complaint, and further alleges, as follows, against all Defendants.

97.      Defendants have engaged in unfair, unlawful, and fraudulent business

practices as set forth above.

00007676.WPD ; 1                          22

98.     By engaging in the above-described acts and practices, Defendants have committed one or more acts of unfair competition within the meaning of the California Business and Professions Code §§ 17200 *et seq*.

99.     Defendants' acts and practices have deceived and/or are likely to deceive members of the consuming public.

100.     Defendants' acts and practices are unlawful because they violate Civil Code §§ 1572, 1709 and 1710. Defendants' acts and practices are also unlawful because they violate Business & Professions Code §§ 17500 *et seq*. Specifically, Defendants have willfully and unlawfully maintained a monopoly power over Toprol-XL and its AB-rated generic equivalents and have deceptively failed to disclose that Toprol-XL was sold at artificially high and non-competitive prices.

101.     Plaintiff and the Class have been damaged by the Defendants' violations of these statutory provisions and seek an order of this Court awarding restitution, disgorgement, and all other relief allowed under §§ 17200 *et seq*. plus interest, attorneys' fees and costs.

## THIRD CAUSE OF ACTION

### FOR DAMAGES UNDER THE ANTITRUST AND DECEPTIVE PRACTICE STATUTES OF THE INDIRECT PURCHASER STATES

102.     Individual and Representative Plaintiff, on behalf of herself and the Indirect Purchaser Class realleges, as if fully set forth, each and every prior allegation contained in the Complaint, and further alleges, as follows, against all Defendants.

103.     This Count is brought by the Plaintiff on behalf of the Class to assert the Indirect Purchaser State Claims.

104.     The attempts to monopolize and monopolization of the relevant market

00007676.WPD ; 1                            23

alleged herein, violate the Indirect Purchaser States' antitrust and/or consumer protection statutes as follows:

a.  The aforementioned practices by Defendants were and are in violation of Alabama Code §§ 8-10-1 *et seq.*;

b.  The aforementioned practices by Defendants were and are in violation of Arizona Revised Statutes §§ 44-1401 *et seq.*;

c.  The aforementioned practices by Defendants were and are in violation of the Cartwright Act, California Business and Professions Code §§ 16700, *et seq.*;

d.  The aforementioned practices by Defendants were and are in violation of the District of Columbia Antitrust Act of 1980, D.C. Code §§ 28-4501, *et seq.*;

e.  The aforementioned practices by Defendants were and are in violation of Florida Stat. §§ 501.201 *et seq.*;

f.  The aforementioned practices by Defendants were and are in violation Iowa Code §§ 553.1 *et seq.*;

g.  The aforementioned practices by Defendants were and are in violation of Kansas Statutes Annotated §§ 50-101, *et seq.*;

h.  The aforementioned practices by Defendants were and are in violation of Maine Revised Statutes Annotated, 10 M.R.S.A. §§ 1101, *et seq.*;

i.  The aforementioned practices by Defendants were and are in violation of Massachusetts Gen. Laws, Ch. 93A, §2;

j.  The aforementioned practices by Defendants were and are in violation of

the Michigan Antitrust Reform Act, MCL §§ 445.771, *et seq.* and/or the

Michigan Consumer Protection Act., MCL §§ 445.901, *et seq.*;

k.  The aforementioned practices by Defendants were and are in violation of

the Minnesota Antitrust Act of 1961, Minn. Stat. §§ 325D.52 *et seq.*;

l.  The aforementioned practices by Defendants were and are in violation of

Mississippi Code Ann. §§ 75.21.1 *et seq.*;

m. The aforementioned practices by Defendants were and are in violation of

Nebraska Rev. Stat. §§ 59.801 *et seq.*;

n.  The aforementioned practices by Defendants were and are in violation of

the Nevada Unfair Trade Practice Act, NRS §§ 598A, *et seq.*;

o.  The aforementioned practices by Defendants were and are in violation of

the New Mexico Antitrust Act, N.M. Stat. Ann. §57-1-1 *et seq.*;

p.  The aforementioned practices by Defendants violate New York General

Business Law §§ 340 *et seq.* and/or New York General Business Law §

349;

q.  The aforementioned practices by Defendants were and are in violation of

North Carolina Gen. Stat. §§ 75-1 *et seq.*;

r.  The aforementioned practices by Defendants were and are in violation of

North Dakota Cent. Code § 51-08.1-01 *et seq.*;

s.  The aforementioned practices by Defendants were and are in violation of

Ohio Rev Code Ann. §§ 1331.01 *et seq.*;

t.  The aforementioned practices of Defendants were and are in violation of

South Dakota antitrust law SDCL §§ 37-1, *et seq.*;

u. The aforementioned practices of Defendants were and are in violation of
Tenn. Code Ann. §§ 47-25-101, *et seq.*;

v. The aforementioned practices of Defendants were and are in violation of
Vermont antitrust law, Vermont Stat. 9 §§ 2453, *et seq.*;

w. The aforementioned practices by Defendants were and are in violation of
W. Va. Code §§ 47-18-1, *et seq.*; and

x. The aforementioned practices by Defendants were and are in violation of
the Wisconsin Antitrust Act. §§133.01, *et seq.*,.

99.     The Defendants, by willfully and knowingly violating each of the State
Antitrust and Unfair Trade Practices statutes, and, acting with malicious intent to injure
Plaintiff and the Class, caused Plaintiff's and the Class' loss of money and property from
May 5, 2005 through the present.

100.    As a result of the conduct described above, Plaintiff and the Class have
sustained and will continue to sustain substantial losses and damage to their business and
property in the form of *inter alia*, being deprived of the ability to purchase less
expensive, generic versions of Toprol-XL and paying prices for metoprolol succinate
products that were higher than they would have been but for Defendants' improper
actions.

101.    Plaintiff and the Class have been damaged by the Defendants' violations
of those statutory provisions and seek damages and multiple damages as permitted by law
for their injuries caused by Defendants' violations of the aforementioned statutes.

## FOURTH CAUSE OF ACTION

## FOR RESTITUTION, DISGORGEMENT AND CONSTRUCTIVE TRUST FOR UNJUST ENRICHMENT BY DEFENDANT

102.    Individual and Representative Plaintiff, on behalf of herself and the California and Indirect Purchaser Classes realleges, as if fully set forth, each and every prior allegation contained in the Complaint, and further alleges, as follows, against all Defendants.

103.    Defendants have benefited from the monopoly profits on their sale of Toprol-XL resulting from their unlawful and inequitable acts alleged in this Complaint.

104.    Defendants' financial benefits resulting from their unlawful and inequitable conduct are traceable to overpayments for Toprol-XL by Plaintiff and the Classes.

105.    Plaintiff and the Classes have conferred an economic benefit upon Defendants in the nature of profits resulting from unlawful overcharges and monopoly profits, to the economic detriment of Plaintiff and the Classes.

106.    The economic benefit of overcharges and monopoly profits derived by Defendants by charging supra-competitive and artificially high prices for Toprol-XL is a direct and proximate cause of Plaintiff's injury.

107.    The financial benefits derived by Defendants rightfully belong to the Plaintiff and the Class, as Plaintiff and the Class paid supra-competitive and monopolistic prices during the Class Period inuring to the benefit of Defendants.

108.    It would be inequitable for Defendants to be permitted to retain any of the unlawful proceeds resulting from Defendants' fraudulent conduct in the filing of sham patent litigation.

00007676.WPD ; 1                      27

109.    It would be inequitable for Defendants to be permitted to retain any of the overpayments for Toprol-XL made by Plaintiff and the Classes which were derived from Defendants' unlawful and anti-competitive methods, acts and practices, as alleged in this Complaint.

110.    Defendants should be compelled to disgorge into a common fund for the benefit of Plaintiff and the Classes all unlawful or inequitable proceeds they have received.

111.    A constructive trust should be imposed upon all unlawful or inequitable monies received by Defendants traceable to Plaintiff and the Classes.

112.    Plaintiff and the Classes have no adequate remedy at law.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff and the Class she seeks to represent pray for judgment against Defendants for the following relief:

a.    For an order certifying the Classes pursuant to Federal Rule of Civil Procedure 23, certifying Plaintiff as the representative of the Classes and designating her counsel as counsel for the Classes;

b.    For an order that Defendants' actions violate § 2 of the Sherman Act;

c.    For an order that Defendants' actions constitute a violation of the antitrust laws;

d.    for an injunction enjoining and restraining Defendants' continued violation of §2 of the Sherman Act, pursuant to 516 of the Clayton Act;

    e.      For an order granting Plaintiff and the California and Indirect Purchaser Classes equitable relief in the nature of disgorgement, restitution and the creation of a constructive trust to remedy Defendants' unjust enrichment;

    f.      For an order granting Plaintiff and the California and Indirect Purchaser Classes damages, and, where applicable, treble, multiple, and other damages, according to the laws of the Indirect Purchaser States, including interest;

    g.      For an order granting to Plaintiff and the Classes the costs of prosecuting this action, together with the interest and reasonable attorneys' fees, experts' fees and costs;

    h.      For an order granting such further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury of all claims so triable asserted in this Complaint.

Dated: March 3, 2006

Respectfully submitted,

Kenneth G. Gilman, BBO #192760
David Pastor, BBO #391000
Douglas M. Brooks, BBO #058850
Daniel D'Angelo, BBO #630321
GILMAN AND PASTOR, LLP
60 State Street, 37th Floor
Boston, MA 02109
(617) 742-9700

Attorneys for Plaintiff

00007676.WPD ; 1    29

JS 44
(Rev. 3/99)

# CIVIL COVER SHEET

The JS–44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

Thelma Clement

**DEFENDANTS**

Astrazeneca Pharmaceuticals LP,
Astrazeneca LP, Astrazeneca AB
and Aktiebolaget Hassle

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF   San Francisco CA
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
TRACT OF LAND INVOLVED.

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
Kenneth G. Gilman, Gilman and Pastor LLP
60 State St., 37th Fl., Boston, MA
02109, Tel: 617-742-9700

ATTORNEYS (IF KNOWN)

## II. BASIS OF JURISDICTION (PLACE AN "X" IN ONE BOX ONLY)

☐ 1 U.S. Government
   Plaintiff

☒ 3 Federal Question
   (U.S. Government Not a Party)

☐ 2 U.S. Government
   Defendant

☐ 4 Diversity
   (Indicate Citizenship of Parties
   in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN "X" IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (PLACE AN "X" IN ONE BOX ONLY)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 151 Medicare Act<br>☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans)<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholders' Suits<br>☐ 190 Other Contract<br>☐ 195 Contract Product Liability | **PERSONAL INJURY**<br>☐ 310 Airplane<br>☐ 315 Airplane Product Liability<br>☐ 320 Assault, Libel & Slander<br>☐ 330 Federal Employers' Liability<br>☐ 340 Marine<br>☐ 345 Marine Product Liability<br>☐ 350 Motor Vehicle<br>☐ 355 Motor Vehicle Product Liability<br>☐ 360 Other Personal Injury | **PERSONAL INJURY**<br>☐ 362 Personal Injury — Med. Malpractice<br>☐ 365 Personal Injury — Product Liability<br>☐ 368 Asbestos Personal Injury Product Liability<br><br>**PERSONAL PROPERTY**<br>☐ 370 Other Fraud<br>☐ 371 Truth in Lending<br>☐ 380 Other Personal Property Damage<br>☐ 385 Property Damage Product Liability | ☐ 610 Agriculture<br>☐ 620 Other Food & Drug<br>☐ 625 Drug Related Seizure of Property 21 USC 881<br>☐ 630 Liquor Laws<br>☐ 640 R.R. & Truck<br>☐ 650 Airline Regs.<br>☐ 660 Occupational Safety/Health<br>☐ 690 Other | ☐ 422 Appeal 28 USC 158<br>☐ 423 Withdrawal 28 USC 157<br><br>**PROPERTY RIGHTS**<br>☐ 820 Copyrights<br>☐ 830 Patent<br>☐ 840 Trademark | ☐ 400 State Reapportionment<br>☒ 410 Antitrust<br>☐ 430 Banks and Banking<br>☐ 450 Commerce/ICC Rates/etc.<br>☐ 460 Deportation<br>☐ 470 Racketeer Influenced and Corrupt Organizations<br>☐ 810 Selective Service<br>☐ 850 Securities/Commodities/Exchange<br>☐ 875 Customer Challenge 12 USC 3410 |
|  | | | **LABOR** | **SOCIAL SECURITY** | ☐ 891 Agricultural Acts<br>☐ 892 Economic Stabilization Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations | ☐ 861 HIA (1395ff)<br>☐ 862 Black Lung (923)<br>☐ 863 DIWC/DIWW (405(g))<br>☐ 864 SSID Title XVI<br>☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters<br>☐ 894 Energy Allocation Act<br>☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation<br>☐ 220 Foreclosure<br>☐ 230 Rent Lease & Ejectment<br>☐ 240 Torts to Land<br>☐ 245 Tort Product Liability<br>☐ 290 All Other Real Property | ☐ 441 Voting<br>☐ 442 Employment<br>☐ 443 Housing/ Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights | ☐ 510 Motions to Vacate Sentence<br>**HABEAS CORPUS:**<br>☐ 530 General<br>☐ 535 Death Penalty<br>☐ 540 Mandamus & Other<br>☐ 550 Civil Rights<br>☐ 555 Prison Condition | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Railway Labor Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS**<br>☐ 870 Taxes (U.S. Plaintiff or Defendant)<br>☐ 871 IRS — Third Party 26 USC 7609 | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice<br>☐ 950 Constitutionality of State Statutes<br>☐ 890 Other Statutory Actions |

## V. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

☒ Original
  Proceeding

☐ 2 Removed from
  State Court

☐ 3 Remanded from
  Appellate Court

☐ 4 Reinstated or
  Reopened

☐ 5 Transferred from
  another district
  (specify)

☐ 6 Multidistrict
  Litigation

Appeal to District
Judge from
☐ 7 Magistrate
  Judgment

## VI. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY.)

15 U.S.C. §2 and 15 U.S.C § 26 – manipulation and attempted monopolization
of the market for Toprol XL and its generic bioequivalents

## VII. REQUESTED IN COMPLAINT:

☒ CHECK IF THIS IS A CLASS ACTION
  UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ YES   ☐ NO

## VIII. RELATED CASE(S) IF ANY (See instructions):

JUDGE N/A

DOCKET NUMBER

DATE
5/3/06

SIGNATURE OF ATTORNEY OF RECORD
Kent C-Git

FOR OFFICE USE ONLY

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

1. Title of case (name of first party on each side only)_____

   <u>Thelma Clement v. Astrazeneca Pharmaceuticals LP</u>

2. Category in which the case belongs based upon the numbered nature of suit code listed on the civil cover sheet. (See local rule 40.1(a)(1)).

   ☒ I.   160, 410, 470, R.23, REGARDLESS OF NATURE OF SUIT.

   ☐ II.  195, 368, 400, 440, 441-444, 540, 550, 555, 625, 710, 720, 730,       *Also complete AO 120 or AO 121
            740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950.        for patent, trademark or copyright cases

   ☐ III. 110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310,
            315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371,
            380, 385, 450, 891.

   ☐ IV.  220, 422, 423, 430, 460, 510, 530, 610, 620, 630, 640, 650, 660,
            690, 810, 861-865, 870, 871, 875, 900.

   ☐ V.   150, 152, 153.

3. Title and number, if any, of related cases. (See local rule 40.1(g)). If more than one prior related case has been filed in this district please indicate the title and number of the first filed case in this court.

   _____

4. Has a prior action between the same parties and based on the same claim ever been filed in this court?

                                                                                          YES ☐   NO ☒

5. Does the complaint in this case question the constitutionality of an act of congress affecting the public interest?  (See 28 USC §2403)

                                                                                          YES ☐   NO ☒

   If so, is the U.S.A. or an officer, agent or employee of the U.S. a party?

                                                                                          YES ☐   NO ☐

6. Is this case required to be heard and determined by a district court of three judges pursuant to title 28 USC §2284?

                                                                                          YES ☐   NO ☒

7. Do all of the parties in this action, excluding governmental agencies of the united states and the Commonwealth of Massachusetts ("governmental agencies"), residing in Massachusetts reside in the same division? - (See Local Rule 40.1(d)).

                                                                                          YES ☒   NO ☐

   A.  If yes, in which division do all of the non-governmental parties reside?

       Eastern Division ☐        Central Division ☒        Western Division ☐

   B.  If no, in which division do the majority of the plaintiffs or the only parties, excluding governmental agencies, residing in Massachusetts reside?

       Eastern Division ☐        Central Division ☐        Western Division ☐

8. If filing a Notice of Removal - are there any motions pending in the state court requiring the attention of this Court? (If yes, submit a separate sheet identifying the motions)

                                                                                          YES ☐   NO ☐

(PLEASE TYPE OR PRINT)

ATTORNEY'S NAME <u>Kenneth G. Gilman        Gilman and Pastor LLP</u>

ADDRESS <u>60 State Street, 37th Floor, Boston MA 02109</u>

TELEPHONE NO. <u>617-742-9700</u>

(Coversheetlocal.wpd - 10/17/02)